UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Coleman

    v.                                      Civil No. 16-cv-498-LM

New Hampshire et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is plaintiff Richard Coleman's complaint (Doc. Nos. 3, 9),[2] filed pursuant to 42 U.S.C. § 1983. The case is before this magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915(e) and LR 4.3(d)(2).

**Preliminary Review**

I. **Standard**

In determining whether a pro se pleading states a claim,

---

[1]Plaintiff has identified the following defendants in this action: the State of New Hampshire; the Town of Lee, New Hampshire; the Town of Lee Selectmen; the Lee Police Department ("LPD"); LPD Chief Chester Murch; LPD Officer Dronsfield, whose first name is unknown ("FNU"); LPD Officer FNU Lyczak; Strafford County Attorney Thomas Velardi; Assistant Strafford County Attorney Kathryn A. Smykowski; Strafford County Grand Jury Foreperson Sara B. Heuckley; and Natasha Cormier.

[2]A second case filed by plaintiff, Coleman v. New Hampshire, No. 16-cv-499-JL, has been consolidated into this case and closed. The complaint in that case was redocketed in this consolidated case as Document No. 9.

the court construes the pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## **Background**

Coleman asserts that on March 7, 2012, he was confronted in his backyard in Lee, New Hampshire, by Lee Police Department ("LPD") Officer Dronsfield. Dronsfield accused Coleman of exposing his genitals to Coleman's neighbor, Natasha Cormier. Coleman showed Dronsfield that he was wearing two layers of garments. Coleman states that when Dronsfield confronted him, Coleman was sitting in a place not visible from Cormier's apartment. Dronsfield left without further incident, but later obtained a warrant for Coleman's arrest for indecent exposure.

Coleman alleges that to obtain that warrant, Dronsfield lied in the affidavit he submitted in support of the warrant, by stating that Dronsfield had found Coleman exposing himself in the yard on March 7, 2012 when he went to investigate Cormier's

report.  Coleman further asserts that Dronsfield omitted from the affidavit exculpatory information, including: Coleman's location at the time Dronsfield entered the yard; that Coleman was wearing two layers of garments when Dronsfield entered the yard; Cormier's history of harassing Coleman and calling the LPD to complain about Coleman, which was known to Dronsfield and other members of the LPD; and information about Cormier's behavior and character that would tend to exculpate Coleman.

Three days later, on March 10, 2012, Dronsfield, LPD Chief Chester Murch, and LPD Officer Lyszack arrested Coleman on the warrant Dronsfield had obtained.  Coleman was booked at the police station, where his wallet was searched and its contents inventoried before Coleman was released on bail later that day. Coleman was subsequently prosecuted for indecent exposure pursuant to the allegations made against him on March 7, 2012. In January 2015, Coleman's New Hampshire attorney advised him that the indecent exposure charge had been dropped.

On June 20, 2013, while the indecent exposure charges was pending, Coleman was indicted by a Strafford County Grand Jury for witness tampering.  The indictment charged that Coleman, "'between the SIXTEENTH day of OCTOBER and the THIRTY-FIRST day of NOVEMBER in the year TWO THOUSAND AND TWELVE, . . . believing

that an official proceeding was pending, . . . purposely attempted to induce Natasha Cormier to inform falsely.'" Compl. (Doc. No. 3), at 18.  Coleman alleges that the description of the offense in the indictment was not sufficiently specific to allow him to identify what acts of his were alleged to have constituted criminal witness tampering.  In January 2015, Coleman's attorney advised Coleman that the witness tampering charge had also been dropped.

## **Claims**

Coleman asserts the following claims for relief:

1. LPD Officer Dronsfield violated Coleman's Fourth Amendment rights:

   a. by entering Coleman's back yard without permission or a warrant;

   b. by providing false information in the affidavit supporting his application for a warrant for Coleman's arrest, and causing Coleman to be arrested on that warrant, which was based on that false affidavit;

   c. by subjecting Coleman to post-arrest/pre-bail detention pursuant to an arrest that was not legitimately supported by probable cause; and

   d. by causing Coleman to be prosecuted maliciously on the basis of false information.

2. LPD Officer Lyszack and LPD Chief Chester Murch violated Coleman's Fourth Amendment rights:

a. by arresting Coleman on March 10, 2012, on a
   warrant that was obtained using false information and
   that therefore was not legitimately supported by
   probable cause;

   b. by subjecting Coleman to post-arrest/pre-bail
   detention pursuant to an arrest that was not
   legitimately supported by probable cause;

   c. by causing Coleman to be prosecuted maliciously
   based on the false information underlying the arrest
   warrant.

3. LPD Officer Lyszack violated Coleman's Fourth Amendment right not to be subjected to an unreasonable search of his property when, while booking Coleman at the LPD on March 10, 2012, Lyszack seized, searched, and inventoried the contents of Coleman's wallet, without probable cause.

4. The State of New Hampshire; the Town of Lee; the Lee Selectmen; the LPD; LPD Chief Murch; LPD Officers Dronsfield and Lyszack; and Natasha Cormier are liable to Coleman for the torts of false arrest, false imprisonment, malicious prosecution, and fraud, under state law, for engaging in the alleged conduct underlying Claims 1 – 3 above, and, as to Cormier, for making false statements to LPD Officer Dronsfield that led to Coleman's arrest.

5. The State of New Hampshire; the Town of Lee; the Lee Selectmen; the LPD; LPD Chief Murch; LPD Officers Dronsfield and Lyszack; and Natasha Cormier conspired to violate Coleman's Fourth Amendment rights, and to commit the torts of false arrest, false imprisonment, malicious prosecution, and fraud, by engaging, or agreeing to engage, in the conduct underlying Claims 1 – 4, above.

6. The State of New Hampshire; Strafford County Attorney Thomas Velardi; Assistant Strafford County Attorney Kathryn A. Smykowski; and Sara B. Heuckley, foreperson of the Strafford County Grand Jury sitting on June 20, 2013, obtained and/or issued an indictment against Coleman on June 20, 2013 for witness tampering that did not give

Coleman notice of the conduct upon which the charge against him was based, in violation of Coleman's:

    a. Sixth Amendment right to a fair trial and to confront the evidence against him; and

    b. Coleman's Fourteenth Amendment due process right to notice of the charges against him.

**IV. <u>Discussion</u>**

    A.   <u>Claims Related to March 2012 Arrest and Search</u>

The statute of limitations for § 1983 claims arising out of events occurring in New Hampshire is three years. <u>See</u> <u>Gorelik v. Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010); <u>see also</u> N.H. Rev. Stat. Ann. ("RSA") § 508:4. Federal law determines when the statute of limitations begins to run. <u>See</u> <u>Gorelik</u>, 605 F.3d at 121. In "a section 1983 case, a claim ordinarily accrues," and the statute begins to run, "'when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005) (citation omitted). The same rules apply to the analogous state law tort claims. <u>See</u> <u>McNamara v. City of Nashua</u>, 629 F.3d 92, 95 (1st Cir. 2011) (discovery rule governed accrual date for plaintiff's state law tort claims).

For Fourth Amendment claims of false arrest or false imprisonment, where the charges were later dropped or dismissed,

the limitations period begins to run "at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 388-89 (2007). "Where an individual is arrested pursuant to a judicial warrant," as in this case, "the individual "becomes held pursuant to legal process at the moment of arrest." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102 n.9 (1st Cir. 2013). The limitations period began to run on Coleman's claims asserting false arrest or false imprisonment on the date of his arrest, March 10, 2015. The three-year limitations period expired, therefore, on March 10, 2015. Coleman filed his complaint in this case in the Eastern District of North Carolina on February 1, 2016, more than ten months after that deadline, rendering those claims untimely.[3]

The same dates for statute of limitations purposes apply to: Coleman's claims that Dronsfield violated his Fourth Amendment rights by entering his backyard without a warrant on

---

[3]This consolidated case was initially filed as two separate cases in the Eastern District of North Carolina, where Coleman lives. That court transferred both cases, to this court, after finding that venue was proper in the District of New Hampshire. See Coleman v. State of N.H., No. 2:16-CV-3-FL, Order & Mem. & Recom. (E.D.N.C. Oct. 26, 2016) (ECF No. 2), adopted by Order (E.D.N.C. Nov. 14, 2016) (ECF No. 4); Coleman v. State of N.H., No. 2:16-cv-53-FL, Order & Mem. & Recom. (E.D.N.C. Oct. 26, 2016) (ECF No. 4), adopted by Order (E.D.N.C. Nov. 14, 2016) (ECF No. 6).

7

March 10, 2012; his claims that his wallet was illegally seized and searched at the LPD; and his state law tort claims, identified here as Claim 4, arising out of those events, as plaintiff knew or had reason to know of the injuries relating to the conduct on underlying those claims on March 10, 2012, more than three years before he filed this action.  Accordingly, the court should dismiss, as untimely, Coleman's Fourth Amendment illegal search, privacy, false arrest, false imprisonment, and wallet-related claims, identified in this Report and Recommendation as Claims 1(a); 1(b); 1(c); 2(a); 2(b); 3; and 4 (to the extent Claim 4 is premised on the conduct underlying Claims 1(a), 1(b), 1(c), 2(a), 2(b), and 3).

    B.   <u>Malicious Prosecution</u>

        **1.**   **Police Officers**

Coleman asserts malicious prosecution claims arising under the Fourth Amendment and state tort law against defendant LPD Officers Dronsfield, Murch, and Lyszack.  Under New Hampshire law, "[t]he four elements of a claim for malicious prosecution are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor."  <u>Farrelly v. City of</u>

Concord, 168 N.H. 430, 445 (2015). Similarly, "a plaintiff may bring a suit under § 1983 ... [for a Fourth Amendment malicious prosecution claim] if [he] can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).

In general, "an arrest is lawful if the police officer has probable cause." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (citation omitted). Because Coleman was arrested on a warrant, the court focuses its inquiry on whether Dronsfield, acting with intentional or reckless disregard for the truth, made a false statement of fact in the arrest warrant affidavit that was material to the finding that there was probable cause for the warrant to issue. See Hernandez-Cuevas, 836 F.3d at 126.

At this stage in the proceedings, and without the affidavit in question to review or additional facts regarding the conditions of Coleman's post-arraignment release,[4] the court

---

[4]Cf. Harrington v. City of Nashua, 610 F.3d 24, 32–33 (1st Cir. 2010) ("standard conditions of pretrial release" do not rise to level of Fourth Amendment seizure, unless accompanied by showing that plaintiff was also "detained after the initiation

9

cannot preclude the possibility that Dronsfield made a false statement in the warrant affidavit that was material to the finding of probable cause, that the prosecution of Coleman on indecent exposure charges was not also based on that false statement; and that Coleman's post-arraignment release conditions were not a "seizure" for Fourth Amendment purposes. Accordingly, in an Order issued simultaneously with this Report and Recommendation, the court directs service of the malicious prosecution claim asserted against Dronsfield, identified herein as Claim 1(d), and Claim 4, to the extent it is premised on the conduct alleged in Claim 1(d).

Coleman has also asserted malicious prosecution claims against Murch and Lyszack for effecting Coleman's arrest pursuant to the warrant that Coleman alleges was obtained by Dronsfield's false statement. Coleman has not asserted facts to suggest that either Murch or Lyszack made, or had knowledge of, the false statements in the warrant affidavit. Accordingly, Coleman's malicious prosecution claims against Murch and Lyszack, identified as Claim 2(c) in this Report and

---

of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty").

10

Recommendation, and Claim 4, to the extent that claim concerns the conduct alleged in Claim 2(c), should be dismissed.

2. Cormier

Coleman has also asserted malicious prosecution claims against Cormier for falsely reporting to the LPD that Coleman exposed himself to her, which led to Coleman's arrest and prosecution. The court can reasonably infer from the complaint that Coleman is asserting that Cormier acted with the intent that Coleman be prosecuted. The complaint asserts minimally sufficient facts to assert a malicious prosecution claim based on state tort law against Cormier, and the court will direct that Cormier be served with that claim in an Order issued simultaneously with this Report and Recommendation.

To the extent Coleman intends to assert a Fourth Amendment malicious prosecution claim against Cormier, however, the claim should be dismissed. Cormier is a private actor, and the allegations in the complaint, including Coleman's assertion that Cormier, in March 2010, was a former LPD officer, are insufficient to warrant treating Cormier as a state actor for purposes of this action. See Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (Fourteenth Amendment "'erects no shield against

merely private conduct, however discriminatory or wrongful'" (citation omitted)).

C. Conspiracy

Even construed liberally, Coleman's complaint, stripped of legal conclusions, fails to assert facts sufficient to support a conspiracy between the defendants in this case. Accordingly, Claim 5 should be dismissed.

D. Claims Related to 2013 Witness Tampering Indictment

Coleman has sued the State of New Hampshire, two Strafford County prosecutors, and the foreperson of the Strafford County grand jury that returned the witness tampering indictment against him in 2013, alleging that they violated his rights by issuing and/or obtaining and prosecuting an indictment that was not sufficiently specific to protect his Sixth and Fourteenth Amendment rights. Each of these entities is immune from suit.

The State of New Hampshire is protected from suits for damages by the Eleventh Amendment. See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014). Prosecutors are entitled to absolute immunity from claims arising out of their "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imbler v. Pachtman,

424 U.S. 409, 430 (1976)). The defendant prosecutors are absolutely immune from a suit for damages for the actions that form the basis of Coleman's claims against them, as set forth in Claim 6 in this Report and Recommendation. Finally, like prosecutors, grand jurors are protected by absolute immunity because of their association with the judicial process. See Runyon v. Lee, No. 12-CV-290-PB, 2013 WL 885947, at *6 (Feb. 14) (citing Imbler, 424 U.S. at 438), R&R approved, 2013 WL 886302 (D.N.H. Mar. 8, 2013). Accordingly, Claim 6, asserted against defendants who are immune from suit, should be dismissed.

## Conclusion

For the foregoing reasons, all claims and defendants in this action except for Claims 1(d) and 4 against defendant Dronsfield and Claim 4 against defendant Cormier should be dismissed from this case. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168

(1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 18, 2017

cc: Richard Coleman, pro se