**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Richard Coleman

     v.                                    Case No. 16-cv-498-LM

State of New Hampshire, et al.


**REPORT AND RECOMMENDATION**

     Pro se plaintiff Richard Coleman alleges that Thomas
Dronsfield of the Lee Police Department maliciously prosecuted
him in violation of state and federal law.[1]  Across numerous
motions and other filings, each party now asks the court to
enter summary judgment in his favor.  These requests have been
referred to the undersigned magistrate judge for report and
recommendation.  As discussed below, the court recommends that
the district judge deny Coleman's request for summary judgment,
grant Dronsfield's request for summary judgment, and deny as
moot several other attendant motions.

---

     [1] Coleman also has claims pending against Natasha Cormier,
who has been defaulted for failure to appear.  See doc. no. 34.
Coleman twice moved for an entry of default judgment against
Cormier, see doc. nos. 37, 47, which the court both times denied
without prejudice, see Sept. 29, 2017 Order (doc. no. 44); Jan.
9, 2018 Order (doc. no. 60).  Coleman subsequently suggested
that he wished to have Cormier "deleted" from this suit, see
doc. no. 71 ¶ 16, but has not formally sought to dismiss her
under Federal Rule of Civil Procedure 41, see April 3, 2018
Report and Recommendation (doc. no. 82) at 4 n. 2.  Beyond the
confines of this footnote, the court does not address Coleman's
claims against Cormier in this Report and Recommendation.

## I.    <u>Overview of Claims</u>

For the purposes of context, the court briefly summarizes Coleman's claims against Dronsfield as alleged in his complaint. A more comprehensive discussion of these claims can be found in the undersigned's April 18, 2017 Report and Recommendation.  <u>See</u> doc. no. 19.  Coleman alleges that in March 2012, his neighbor, Natasha Cormier, falsely reported to law enforcement that Coleman was exposing his genitals to her.  Dronsfield, then a Sergeant with the Lee Police Department, responded to Coleman's residence and confronted Coleman, but did not arrest Coleman at that time.  Dronsfield subsequently obtained an arrest warrant for indecent exposure, and Coleman alleges that Dronsfield lied in the affidavit he submitted to secure that warrant and intentionally omitted exculpatory information from the affidavit.  Coleman was arrested and prosecuted, but the charges were ultimately dropped in January 2015.  Coleman brings malicious-prosecution claims against Dronsfield under the Fourth Amendment by way of 42 U.S.C. § 1983 and under state tort law.

## II.    <u>Pending Motions</u>

As noted, there are numerous motions and other filings currently pending.  These documents can be separated into six categories.  The first comprises Coleman's initial motion for summary judgment (doc. no. 70), Dronsfield's objection (doc. no. 75), Coleman's "motion to deny" that objection (doc. no. 79),

and Dronsfield's response to the "motion to deny" (doc. no. 81).
The second includes Dronsfield's motion for summary judgment
(doc. no. 76), Colemans' "motion to deny" that motion (doc. no.
88), Dronsfield's response to that "motion to deny" (doc. no.
90), and Coleman's subsequent objection to Dronsfield's
underlying motion for summary judgment (doc. no. 95).  The third
is composed of Dronsfield's motion to strike Coleman's objection
to Dronsfield's motion for summary judgment (doc. no. 97),
Coleman's "motion to deny" that motion (doc. no. 3), and
Dronsfield's response thereto (doc. no. 105).  The fourth
consists of Coleman's motion for amended summary judgment (doc.
no. 102) and Dronsfield's objection (doc. no. 106).  The fifth
includes Coleman's motion to supplement his motion for summary
judgment (doc. no. 113) and Dronsfield's objection (doc. no.
114).  The last comprises Coleman's motion to charge Dronsfield
with perjury, obstruction of justice, and fraud, and to charge
Dronsfield's former attorney, Matthew Cairns, with subornation
of perjury (doc. no. 100), Dronsfield's objection (doc. no.
104), Coleman's "motion to deny" that objection (doc. no. 109),
and Dronsfield's response to that "motion to deny" (doc. no.
111).

        As an initial matter, all of Coleman's "motions to deny"
are, in substance if not form, responses to the filings he seeks
to have denied.  The court therefore construes these "motions to
deny" as objections or replies, as may be appropriate, rather

than as separate motions.  The court likewise construes Dronsfield's responses to those filings as replies or surreplies rather than separate responses.

Additionally, in deference to Coleman's pro se status, the court will consider all of Coleman's filings, whether timely or not, when analyzing the respective requests for summary judgment.  Thus, for the purposes of the present analysis, the court construes Coleman's requests for summary judgment to consist of his initial motion (doc. no. 70), his subsequent motion (doc. no. 102), and his recent motion to supplement (doc. no. 112).  Similarly, the court considers Coleman's objection to Dronsfield's motion for summary judgment to consist of his "motion to deny" that motion (doc. no. 88) and his subsequent objection (doc. no. 95).

As noted, the court also has for consideration Dronsfield's motion to strike and Coleman's motion seeking criminal charges against Dronsfield and Attorney Cairns.  As the latter motion does not directly relate to the merits of the summary-judgment motions, the court takes it under advisement and will address it in a separate ruling.  And because the court concludes that Dronsfield is entitled to summary judgment even if it considers the documents subject to the motion to strike, the court need not reach that motion and instead recommends below that it be denied as moot.

In sum, despite the plethora of filings currently pending, the court is, in essence, presented with cross motions for summary judgment.  The court focuses its analysis accordingly.

### III. <u>Standard of Review</u>

When analyzing cross motions for summary judgment, the court applies the same standard to each motion.  <u>See</u> <u>Fadili v. Deutsche Bank Nat'l Tr. Co.</u>, 772 F.3d 951, 953 (1st Cir. 2014). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Xiaoyan Tang v. Citizens Bank</u>, N.A., 821 F.3d 206, 215 (1st Cir. 2016).  "An issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case."  <u>Xiaoyan Tang</u>, 821 F.3d at 215 (internal quotation marks and citations omitted).  At the summary judgment stage, the court "view[s] the facts in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in the nonmovant's favor . . . ."  <u>Garmon v. Nat'l R.R. Passenger Corp.</u>, 844 F.3d 307, 312 (1st Cir. 2016) (citation and quotation marks omitted).  The court will not, however, credit "conclusory allegations, improbable inferences, and unsupported speculation."  <u>Fanning v. Fed. Trade Comm'n</u>, 821 F.3d 164, 170 (1st Cir. 2016) (citation and quotation marks omitted) <u>cert. denied</u>, 137 S. Ct. 627 (2017).

"A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016). Once the moving party makes the required showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which he would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in his favor." Id. (citation omitted). "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'" Id. (citations omitted). The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment." Id.

## IV. Coleman's Motion for Summary Judgment

Coleman moves for summary judgment on both of his malicious-prosecution claims. He does not, however, attach any affidavits or other evidence to his summary-judgment filings. See Fed. R. Civ. P. 56(c)(1). Rather, Coleman raises a series of arguments as to why, in his view, he is entitled to summary judgment. The court addresses each of these arguments in turn.

Coleman first argues that he is entitled to summary judgment because Judge McCafferty previously concluded, in her September 29, 2017 Order denying Dronsfield's motion to dismiss, that Coleman's malicious-prosecution claims were not barred by

res judicata.  This argument is unpersuasive.  In that Order,
Judge McCafferty concluded that a previous lawsuit brought by
Coleman in 2012 did not bar his malicious-prosecution claims in
this case because Coleman could not have brought those claims
until January 2015, when the underlying criminal prosecution was
dismissed.  See 2017 DNH 213, 3-5.  She reached this conclusion
because termination of criminal charges in the plaintiff's favor
is an essential element of malicious prosecution under state and
federal law.  See id. at 4.  She was not asked to reach the
merits of Coleman's claims, and she did not do so in her Order.
Her decision therefore cannot reasonably be read to suggest that
Coleman would ultimately prevail on those claims, let alone as a
matter of law.  As such, the September 29, 2017 Order provides
no basis to enter summary judgment in Coleman's favor.

In a similar vein, Coleman contends that the court should
enter summary judgment in his favor based on the undersigned's
April 18, 2017 Report and Recommendation following preliminary
review.  To this end, Coleman asserts that the undersigned
concluded in that Report and Recommendation that Coleman had
presented sufficient evidence to support his malicious-
prosecution claims.  Coleman contends that he is entitled to
summary judgment because Dronsfield has failed to meaningfully
counter that evidence.

This argument misapprehends the scope of the court's
analysis on preliminary review.  When conducting a preliminary

review of a complaint, the court focuses solely on whether the allegations in the complaint, when construed liberally, state a facially plausible claim for relief.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013).  At no point does the court consider whether a party has proffered evidence in support of those allegations.  Thus, in recommending that Coleman's malicious-prosecution claims be allowed to proceed, the court concluded only that Coleman plausibly alleged those claims, not that Coleman had presented evidence sufficient to support recovery.  Coleman's reliance on the April 18, 2017 Report and Recommendation is therefore misplaced.

Coleman next argues that the court should enter summary judgment in his favor due to Dronsfield's egregious conduct during the course of this litigation.  This is a recurring contention in Coleman's filings, and the court addresses it in greater detail below.  See infra pp. 21-22.  Suffice it for now to say that even if the relief Coleman seeks were within the court's power, but see Fed. R. Civ. P. 56(h), Coleman has not identified any conduct by Dronsfield that would warrant such a drastic sanction.  This argument is accordingly without merit.

Finally, Coleman contends that he is entitled to summary judgment because Dronsfield unwittingly admitted that Coleman did not commit indecent exposure as defined under New Hampshire law.  In support of this argument, Coleman notes that Dronsfield

stated in his summary-judgment affidavit that on the day in
question he observed "a small washcloth covering [Coleman's]
genitals" and that "Coleman was shaved and void of any hair in
his genital area." See doc. no. 77-1 ¶ 5.  According to
Coleman, this proves that he did not commit the crime of
indecent exposure, because it is only a crime under New
Hampshire law to expose one's "genitals," not one's "genital
area."  Coleman asks the court to infer from this fact that
Dronsfield lied in securing the arrest warrant.  This argument
fails for several reasons.

First, Coleman emphasizes one sentence from Dronsfield's
summary-judgment affidavit, while ignoring other portions of
that affidavit less favorable to his position.  For instance,
Dronsfield also states in his affidavit that he observed Coleman
"seated in a lawn chair . . . not wearing any undergarments" and
that Dronsfield "startled" Coleman, causing him to "pull the
right side of the towel over his lap." Id. ¶ 4.  These
statements, when viewed in the light most favorable to the non-
moving party — at this juncture, Dronsfield — support a
reasonable inference that Dronsfield observed Coleman exposing
his genitals.  Thus, Dronsfield's summary-judgment affidavit in
no way conclusively demonstrates that Coleman's genitals were
not exposed.

Moreover, even were the court to assume that Coleman's
genitals were covered when Dronsfield first made contact with

him, nothing in Dronsfield's summary-judgment affidavit conclusively demonstrates that Dronsfield lied in securing the arrest warrant.  Dronsfield did not submit the affidavit in support of the arrest warrant in this case; it was signed and submitted by a Sergeant Brian W. Huppe.  See doc. no. 77-4 at 3. And while that affidavit does state that Dronsfield observed Coleman "exposing his genitals," see id. ¶ III, Dronsfield's own narrative report of his interactions with Coleman on the day in question mirrors his summary-judgment affidavit nearly verbatim, compare doc. no. 77-2 at 1 with doc. no. 77-1 ¶ 4-5.  Thus, even accepting Coleman's contention that Dronsfield's summary-judgment affidavit is materially different from the statement in the affidavit supporting the arrest warrant, Coleman has still failed to point to any meaningful inconsistency in what Dronsfield personally avers he observed that day.

Coleman is likewise incorrect in his contention that if Dronsfield did not personally observe Coleman exposing his genitals, Coleman could not have committed the crime of indecent exposure.  Dronsfield represents, in both his narrative report and his summary-judgment affidavit, that Natasha Cormier personally observed Coleman exposing his genitals on the day in question.  See doc. no. 77-2 at 1; doc. no. 77-1 ¶ 3.  This is consistent with Cormier's own statement to law enforcement.  See doc. no. 77-3.  And the arrest warrant itself specifically states that Coleman committed the crime of indecent exposure by

knowingly exposing his genitals "in view of another tenent [sic] from her kitchen window."  Doc. no. 77-4 at 1.  In light of this evidence, the court cannot conclude that Dronsfield's personal observations necessarily served as the sole basis for Coleman's arrest.

Finally, and perhaps most fundamentally, Coleman's contention that one must expose one's genitals to commit indecent exposure under New Hampshire law is simply wrong.  As relevant here, indecent exposure occurs when a person "exposes his or her genitals, or performs any other act of gross lewdness under circumstances which he or she should know will likely cause affront or alarm."  N.H. Rev. Stat. Ann. § 645:1, I (emphasis added).  Based on this definition, the court would be unable to conclude as a matter of law that Coleman did not commit indecent exposure even were the record confined to Dronsfield's statements that he observed "a small washcloth covering [Coleman's] genitals" and that "Coleman was shaved and void of any hair in his genital area."  The court rejects Coleman's argument to the contrary.

"It is . . . a rare case in which the party with the burden of proof will be entitled to summary judgment."  Guardian Angel Credit Union v. MetaBank, 2011 DNH 111, 22 (Barbadoro, J.).  This is not such a case.  Coleman has not pointed to an absence of genuine issues of material fact in the record or otherwise furthered a compelling argument as to why he is entitled to

judgment as a matter of law.  The district judge should
accordingly deny Coleman's motion for summary judgment (doc. no.
70), motion for amended summary judgment (doc. no. 102), and
motion to supplement his motion for summary judgment (doc. no.
112).

## V.  **Dronsfield's Motion for Summary Judgment**

Having concluded that Coleman is not entitled to summary
judgment on his malicious-prosecution claims, the court now must
separately analyze the evidence in the record to determine
whether Dronsfield is entitled to summary judgment on those
claims.  See Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d
951, 953 (1st Cir. 2014).  This evidence, taken in the light
most favorable to Coleman, informs the following background.

## A.  **Background**

On March 7, 2012, Cormier observed Coleman, her neighbor,
from the kitchen window of her residence in Lee, New Hampshire.
Doc. no. 77-3.  Coleman was wearing a small green wrap around
his waist, but appeared to otherwise be naked.  Id.  Coleman sat
in a beach chair with a book and a razor in one hand and a small
hand towel in the other hand.  Id.  He then opened the green
wrap and began shaving his genitals.  Id.

Cormier called the Lee Police Department and reported what
she observed.  Id.; doc. no. 77-2.  Dronsfield responded to
Cormier's apartment, and she informed Dronsfield that Coleman

was behind the house.  Doc. no. 77-2.  Dronsfield walked around
the house and made contact with Coleman near the southeast
corner.  Id.  Coleman was sitting on a towel on a lawn chair and
was not wearing undergarments.  Id.  Dronsfield startled
Coleman, who pulled the right side of the towel over his lap.
Id.  Dronsfield asked Coleman was he was doing, and Coleman
replied "nothing."  Id.  Dronsfield asked Coleman why he would
expose himself within view of his neighbors' windows.  Id.
Coleman responded that he was not exposing himself and pulled
back the towel from his lap.  Id.  Dronsfield observed a small
washcloth covering Coleman's genitals and that Coleman's genital
area was "shaved and void of any hair."  Id.  Dronsfield
suggested that Coleman had exposed himself while he was shaving,
and Coleman replied that he "d[id] this all of the time and she
never complained before."  Id.

     After telling Coleman that he would be in touch, Dronsfield
walked back around the house to speak with Cormier.  Id.
Cormier indicated that this was not the first time she observed
Coleman exposing himself.  Id.  Dronsfield asked Cormier to
provide a statement about her observations and any other similar
incidents involving Dronsfield.  Id.  Cormier provided a one-
page statement the following day.  Doc. no. 77-1 ¶ 7.

     Based on Cormier's statements and his own observations,
Dronsfield believed there was sufficient probable cause to
arrest Coleman for indecent exposure and lewdness, a Class B

misdemeanor under New Hampshire Revised Statutes Annotated
§ 645:1.  Id. ¶ 9.  On March 9, 2012, two days after the
incident, Sergeant Brian W. Huppe of the Lee Police Department
applied for an arrest warrant in the New Hampshire Circuit
Court.  Doc. no. 77-4.

In support of this application, Huppe submitted an
affidavit describing the events of March 7.  Id. at 3.  Huppe's
description is largely consistent with the above narrative, save
that Huppe averred that Cormier observed Coleman with a towel
around his waist rather than "green wrap" and that when
Dronsfield went around the building, he observed Dronsfield
"sitting on the towel exposing his genitals."  Id. ¶¶ II, III.
Based on this affidavit, a justice of the peace issued a
complaint charging Coleman with Class B misdemeanor indecent
exposure and lewdness and a warrant for Coleman's arrest.  Id.
at 1, 2.  On March 10, 2012, Coleman was arrested and
transported to the Lee Police Department, where he was booked
and released on $1,000 personal recognizance bail.  Doc. no. 77-
5; doc. no. 77-6.

Following legal machinations not relevant to Dronsfield's
motion, see doc. no. 77-11 at 1-2, the Strafford County
Attorney's Office entered a *nolle prosequi* on the Class B
misdemeanor charge (doc. no. 77-8 ¶ 4).  The county attorney's
office then refiled the charge via an information as a Class A
misdemeanor in Strafford County Superior Court.  Id.  While that

14

charge was pending, Coleman was indicted for witness tampering due to a letter he sent Cormier's attorney.  See doc. no. 77-13; doc. no. 77-12.  Dronsfield was not involved in the investigation of the witness-tampering charge.  Doc. no. 77-9 ¶ 6.  After Coleman rejected a plea negotiated on his behalf by his attorney, the county attorney's office entered *nolle prosequis* on both charges because Coleman lived outside of the states from which the county attorney's office typically extradited defendants and the county attorney's office had concerns regarding Coleman's mental capacity and competence to stand trial.  Doc. no. 77-9 ¶¶ 8-9; doc. no. 77-15; doc. no. 1-2. This action followed.

**B.    Discussion**

Under state and federal law, claims for malicious prosecution contain similar, but not identical, elements.  In New Hampshire, malicious prosecution has four elements: "(1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor."  Farrelly v. City of Concord, 168 N.H. 430, 445 (2015).  A plaintiff bringing a Fourth Amendment malicious-prosecution claim under § 1983 must establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."

Hernandez-Cuevas, 723 F.3d at 101 (citations and internal quotation marks omitted).

Dronsfield raises numerous arguments as to why he is entitled to summary judgment on both of Coleman's claims. Among these, Dronsfield contends that the undisputed facts in the record demonstrate that there was probable cause to arrest Coleman for indecent exposure on the day in question. Because the court agrees, it limits its inquiry to the probable cause.

    1.   Probable Cause

As noted, lack of probable cause is an element of malicious prosecution under both state and federal law. Probable cause exists under the Fourth Amendment "when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that defendant had committed or was committing an offense." United States v. Pardue, 385 F.3d 101, 107 (1st Cir. 2004) (citation omitted). Similarly, in the context of a state-law malicious-prosecution claim, "probable cause is defined as such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Paul v. Sherburne, 153 N.H. 747, 749 (2006) (brackets, internal quotation marks, and citations omitted).

Dronsfield points to significant record evidence demonstrating that there was probable cause under either definition to arrest Coleman for indecent exposure. For instance, Dronsfield submits evidence demonstrating that Cormier contacted the Lee Department and reported that on the day in question she observed Coleman with his genitals exposed shaving his genital area within view of her kitchen window. Dronsfield further points to evidence demonstrating both that he personally observed Coleman sitting on a towel on a lawn chair with only a washcloth covering his genital area and that he personally observed that Coleman's groin area appeared to be shaved. Even when viewed in the light most favorable to Coleman, this evidence supports the conclusion that was probable cause under both state and federal law to believe that on the day in question Coleman exposed his genitals or performed another act of gross lewdness under circumstances which he should have known would likely cause affront or alarm. See N.H. Rev. Stat. Ann. § 645:1, I. Dronsfield has therefore met his initial burden under the summary-judgment standard. See Flovac, 817 F.3d at 853.

The burden accordingly shifts to Coleman to cite to "materials of evidentiary quality" demonstrating that "the trier of fact could reasonably resolve [the probable cause] issue in his favor." Flovac, 817 F.3d at 853. Coleman has not done so here. As was the case with his own motion for summary judgment,

Coleman does not attach any affidavits or other evidence to his objections to Dronsfield's motion.  He similarly makes little meaningful attempt to demonstrate that genuine disputes of fact exist within the evidence Dronsfield has submitted.

Instead, Coleman largely rests on a general assertion, present in this case since its inception, that Dronsfield lied in securing the arrest warrant by falsely stating that he personally observed Coleman exposing his genitals.  Once again, the only evidence Coleman points to in support of this assertion is the perceived discrepancy between Dronsfield's summary-judgment affidavit and the affidavit supporting the application for the arrest warrant.  This argument fails for the reasons stated above: namely, that Huppe, not Dronsfield, applied for the arrest warrant and prepared the supporting affidavit and that Dronsfield's summary-judgment affidavit and his narrative report from the date of the incident do not conflict.  In other words, Coleman has provided no basis to infer that Dronsfield in any way misled the justice of the peace who issued the arrest warrant.

This would remain so even if the discrepancy at issue were somehow attributable to Dronsfield.  It is well established that a facially valid arrest warrant creates a presumption of probable cause that is only overcome by demonstrating that law enforcement secured the warrant with evidence "that was not to be believed or appropriately accepted by the officer as true."

Hernandez-Cuevas, 723 F.3d at 101 (brackets and internal quotation marks omitted) (quoting Franks v. Delaware, 438 U.S. 154, 165 (1974)). This requires more than "allegations of police negligence or innocent mistake"; rather, an officer must have made statements amounting to "deliberate falsehood or reckless disregard for the truth" and those statements must have been "necessary to the . . . probable cause determination." Id. (ellipsis, internal quotation marks, and brackets omitted) (quoting Franks, 438 U.S. at 171). There is nothing in the record to suggest that, even when attributed to Dronsfield, the discrepancy at issue here was anything more than negligence or an innocent mistake. Additionally, Coleman has failed to demonstrate that the statement he challenges was somehow necessary to the probable-cause determination. Coleman's reliance on this purported discrepancy is therefore unavailing.

Coleman points to no other evidence to support his assertion that Dronsfield lied in securing the arrest warrant. Absent evidentiary support, this assertion amounts to nothing more than unsupported speculation, which cannot defeat summary judgment. See Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016). Coleman has accordingly not demonstrated that there is a genuine dispute of fact as to whether probable cause existed for his arrest. As probable cause is an essential element of both of Coleman's malicious-

prosecution claims, the district judge should grant Dronsfield's
motion for summary judgment on this basis.

### 2.    Coleman's Allegations of Misconduct

As suggested above, Coleman repeatedly alleges in his
filings that Dronsfield and his attorney have engaged in
misconduct throughout the course of this litigation.  Indeed,
this serves as Coleman's primary argument as to why he is
entitled to summary judgment (or, at least, why Dronsfield is
not entitled to summary judgment).  After careful review of all
of Coleman's filings, however, the court cannot identify any
instance of misconduct during this litigation attributable to
Dronsfield or his counsel.  Rather, Coleman's allegations appear
to be rooted in a misunderstanding of this court's previous
recommendations and rulings in this case and of the adversarial
nature of our judicial system.  As discussed above, the previous
decisions in this case only determined that Coleman had stated
facially plausible claims for malicious prosecution under state
and federal law, not that he had conclusively proved those
claims.  See supra pp 7-8.  And a party does not commit fraud or
perjury merely by taking a position contrary to that of an
opposing party or by asserting facts inconsistent with an
opposing party's own recollection or understanding.  In short,

the court rejects Coleman's allegations of misconduct by Dronsfield and his attorney.[2]

## VI.  Conclusion

Based on the foregoing, the court recommends that the district judge deny Coleman's request for summary judgment and grant Dronsfield's request for summary judgment.  To effectuate this outcome, the court recommends that the district judge:

- deny Coleman's summary-judgment documents (doc. nos. 70, 102, and 112);

- grant Dronsfield's motion for summary judgment (doc. no. 76);

- construe Coleman's "motions to deny" (doc. nos. 79, 88, and 103) as objections or replies, as may be appropriate, and terminate them as moot; and

- deny Dronsfield's motion to strike (doc. no. 97) as moot in light of the disposition of the motions for summary judgment.

The undersigned takes Coleman's motion seeking criminal charges against Dronsfield and Attorney Cairns (doc. no. 100) under advisement and will issue a ruling under separate caption.

---

[2] Nor are this court's adverse rulings, past or present, evidence of bias or partiality, as Coleman appears to suggest. See United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976). The court has impartially assessed this case from the outset and ruled in favor of both parties along the way.  The court's present recommendation is not based on any bias for Dronsfield or against Coleman, but rather because Dronsfield has marshaled evidence demonstrating that Coleman's arrest was supported by probable cause and Coleman has not countered that evidence with any of his own.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Santos-Santos</u> <u>v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 16, 2018

cc:   Richard Coleman, pro se
      Charles P. Bauer, Esq.
      Matthew Vernon Burrows, Esq.